# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN BARNHARDT,

　　　　**Plaintiff,**

　　　　v.                                    Civil Action No.  08-1327  (JDB)

**DISTRICT OF COLUMBIA,** *et al.*,

　　　　**Defendants.**

## MEMORANDUM OPINION

This matter is before the Court on the District of Columbia's Amended Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[1]  For the reasons discussed below, the motion will be granted.

### I.  BACKGROUND

On May 5, 2005, Lennard Smith and other Metro Transit Police Department officers arrested plaintiff in or near the 3500 block of Jay Street in Northeast, Washington, D.C.  Compl. ¶ 16.  "At the time of [the] arrest, [Officer] Smith seized from plaintiff's vehicle, and from [p]laintiff's person, several items of property," *id.* ¶ 20, among which allegedly were the following:

> (1) U.S. Currency; (2) Two Nextel Phones; (3) Money Orders (two @ $500 ea.); (4) personal papers and effects; and (5) Jewelry, consisting of two gold diamond rings (valued at $15,000) and one gold bar-linked diamond chain (valued at $5,000).

---

[1]　　　Based on plaintiff's Stipulations of Dismissal [Dkt. #20-21], the Court grants as conceded the motions to dismiss filed on behalf of the Washington Metropolitan Area Transit Authority [Dkt. #10] and on behalf of Anthony Williams and  Charles Ramsey [Dkt. #13].

*Id.* Officer Smith transported plaintiff from the scene of the arrest to the Greater Southeast Community Hospital, *id.* ¶ 17, and upon his discharge at 12:45 a.m., *id.*, Metro Transit Police officers transported plaintiff to the Metropolitan Police Department's "Central Cellblock on Indiana Avenue, N.W. for processing and presentment in [the] Superior Court [of the District of Columbia]." *Id.* ¶ 18. "At no time on the date of his arrest[] was plaintiff ever taken to the MPD's 6th District for any reason." *Id.* ¶ 23 (emphasis in original).

After plaintiff's release from custody, he "went immediately to the Metro Transit Police Department to inquire about the return of the property (including the jewelry) which had been taken during the arrest." Compl. ¶ 21. Plaintiff was informed that his property could not be returned because it "may be used as evidence in the criminal case pending before the Grand Jury." *Id.*

When the criminal proceedings concluded, plaintiff filed a motion in the Superior Court for return of the property seized at the time of his arrest. Compl. ¶ 22. The presiding judge granted the motion on September 10, 2007, *id.*, and, armed with the Superior Court's Order, plaintiff went to the Metro Transit Police Department's Property Office on September 20, 2007. *Id.* ¶ 23. Metro Transit Police "turned over . . . most of the items . . . but could not locate the Plaintiff's jewelry, money orders and miscellaneous other items." *Id.* (emphasis in original). In an October 2007 filing, the Transit Police "informed the [Superior] Court that: (1) Plaintiff's jewelry had been left in the custody of the Sixth District of the Metropolitan Police Department after his arrest; and (2) the jewelry had been 'destroyed' by the Sixth District Property Office on May 4, 2006." *Id.*

Plaintiff brings this action against the District of Columbia under 42 U.S.C. § 1983 for the alleged violation of his Fifth Amendment right to due process.[2]  Compl. ¶¶ 32, 34 (Counts 4 and 5).  In addition, plaintiff brings common law tort claims for negligence (Count 6), intentional infliction of emotional distress (Count 7), and conversion (Count 8).[3]  *Id.* ¶¶ 37, 40, 43.  He demands a declaratory judgment and an award of actual, compensatory, special, general and punitive damages.  *Id.* at 13-14 (Request for Relief) (page numbers designated by the Court).

## II.  DISCUSSION

### A.  *Plaintiff's Constitutional Claims Against the District of Columbia*

The District of Columbia moves to dismiss plaintiff's Fifth Amendment claim on the ground that the complaint fails to state a claim upon which the Court may grant relief.  *See* District of Columbia's Amended Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. ("Def.'s Mot.") at 5-6.  Specifically, the District argues that plaintiff does not properly allege municipal liability under 42 U.S.C. § 1983 ("Section 1983").[4]  *Id.*

---

[2]      Plaintiff "concedes that the case should not proceed directly based on the Fourteenth Amendment,"   Mem. in Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 2, and the Court will dismiss that claim.

[3]      Because plaintiff "would not oppose dismissal of his claim for intentional and/or negligent infliction of emotional distress under the facts in this case," Pl.'s Opp'n at 5, the Court will dismiss Count 7.

[4]      In relevant part, Section 1983  provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

(continued...)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. __, __, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.   *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).   A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor.   *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2001).   Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65.   Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (citations omitted).

"[A] municipality can be found liable under [Section] 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 694

---

[4](...continued)
42 U.S.C. § 1983.  To state a claim under Section 1983, a complaint must allege facts sufficient to show that the conduct of which a plaintiff complains (1) was committed by a person acting under color of state law, and (2) deprived the plaintiff of a constitutionally-protected right. *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988).  The District of Columbia is a municipality and is considered a "person" for purposes of Section 1983. *See, e.g., Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990).  The District does not address in its motion whether plaintiff adequately alleges the deprivation of a constitutional right.  The Court presumes without deciding that he does.

(1978) (emphasis in original)).  "*Respondeat superior* or vicarious liability will not attach under

[Section] 1983."  *Id.*  The District of Columbia, then, is subject to liability under Section 1983

only "when an official policy or custom causes the complainant to suffer a deprivation of a

constitutional right."  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).  The

policy or custom itself must be the moving force behind the constitutional violation.  *Id.* (citing

*Monell*, 436 U.S. at 694); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)

("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to

follow a course of action is made from among various alternatives by the official or officials

responsible for establishing final policy with respect to the subject matter in question.");

*Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985) (requiring a plaintiff to show a course

deliberately pursued by the city establishing an affirmative link between the city's policy and the

alleged constitutional violation).

    The Court liberally construes a complaint filed by a *pro se* litigant, and holds it to a less

stringent standard than is applied to a formal pleading drafted by a lawyer.  *See Haines v. Kerner*,

404 U.S. 519, 520 (1972).  There is no heightened pleading standard in a civil rights case

alleging municipal liability for civil rights violations, *see Leatherman v. Tarrant County*

*Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993), and a complaint "need

not plead law or match facts to every element of a legal theory," *Sparrow v. United Air Lines,*

*Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (citations omitted).  "Nevertheless, [a] Complaint

must 'include some factual basis for the allegation of a municipal policy or custom.'"  *Hinson ex*

*rel. N.H. v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 29 (D.D.C. 2007) (quoting *Atchinson v.*

*District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996)).

Plaintiff's Complaint barely hints at the existence of a municipal policy, custom, or practice. It alleges that MPD personnel acted "under color of law, and pursuant to official policy and custom," and that the District of Columbia "knowingly, or negligently, failed to properly instruct, supervise, control, and discipline employees in the 6th District Property Office in the performance of their duties." Compl. ¶ 35. Plaintiff pleads his way out of court on his Section 1983 claim, however, by alleging that the sole basis for the District's liability "for the actions of the Property Clerk [is] under the doctrine of Respondeat Superior." *Id.* (emphasis in original). "*Respondeat superior* or vicarious liability will not attach under [Section] 1983." *Harris*, 489 U.S. at 385. Hence, the Complaint fails to state a claim under 42 U.S.C. § 1983 against the District of Columbia.

### B. Plaintiff's Common Law Claims Against the District of Columbia

With respect to the common law claims, the District moves for summary judgment on the ground that plaintiff failed to comply with the mandatory notice requirements of D.C. Code § 12-309. *See* Def.'s Mot. at 7-10. In relevant part, D.C. Code § 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309. The statutory purpose is "to give the District officials reasonable notice of [an incident] so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1987). Potential claimants, then, must "provide an early warning to District of Columbia officials

regarding litigation likely to occur in the future." *Id.*  Compliance with the terms of D.C. Code §

12-309 is a mandatory prerequisite to filing a tort action against the District of Columbia.  *See,*

*e.g., District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995); *Gwinn v. District of*

*Columbia*, 434 A.2d 1376, 1378 (D.C. 1981); *Hill v. District of Columbia*, 345 A.2d 867, 869

(D.C. 1975).  Because D.C. Code § 12-309 "constitutes a departure from the common law

concept of sovereign immunity," it "is to be strictly construed," *Gwinn*, 434 A.2d at 1378, even if

the result precludes a claimant's demand for compensation, *see Hill*, 345 A.2d at 869 (concurring

with trial judge's assessment that mandatory compliance with Section 12-309 may have a "harsh

result").

    On or about March 17, 2008, plaintiff sent by certified mail a "Notice of Intent to Bring

Claim for Damages" stemming from "the destruction of certain items of . . . personal property by

the Metropolitan Police Department's . . . Sixth District Property Office on May 4, 2006."  Def.'s

Mot., Ex. A at 1.  The Mayor's Correspondence Unit received the letter on March 25, 2008.  *See*

*id.* (date stamp).  The Notice recounts plaintiff's May 5, 2005 arrest, the seizure of property by

Metro Transit officers, the Superior Court Order granting his motion for return of property, and

his discovery in October 2007 that his jewelry had been destroyed.  *Id.*  He explained that MPD

officers were not involved in his arrest and that he was never taken to the Sixth District, *id.* at 2,

such that he was "put on notice for the first time that Metro Transit officers left [his] jewelry in

the custody of the Property Office at MPD's Sixth District" in October 2007.  *Id.* at 1.

    The District of Columbia argues that plaintiff's cause of action arose either on May 5,

2005, the date on which his property was seized, or on May 4, 2006, the date on which the

jewelry was destroyed.  Def.'s Mot. at 8, 10.  In its view, plaintiff's March 17, 2008 Notice is

untimely in either circumstance.  *Id.* at 8.  Plaintiff counters that, "where [he] has no reason to believe that an injury exists, the better interpretation is to require [him] to file his notice within 6 month[s] of learning that an injury was sustained."  Pl.'s Opp'n at 4 (page numbers designated by the Court).  He argues that his March 17, 2008 Notice was timely filed because he submitted it within six months of October 2007, when plaintiff learned that his jewelry had been destroyed.  *Id.*; *see* Pl.'s Aff. ¶¶ 2-4.

"Unlike a statute of limitations, which can be tolled through the discovery rule, [Section] 12-309 starts the clock at the instant an injury or damage is sustained."  *Brown v. District of Columbia*, 853 A.2d 733, 736-37 (D.C. 2004); *District of Columbia v. Dunmore*, 662 A.2d 1356, 1360 (D.C. 1995) ("To read the discovery rule into [S]ection 12-309 would make [S]ection 12-309 a nullity in a sizeable number of cases . . ..").  Given the purposes of the notice requirement, "any doubt as to the proper timing for the giving of notice should be resolved in favor of earlier notice."  *District of Columbia v. Ross*, 697 A.2d 14, 19 (D.C. 1997).  Plaintiff did not sustain his injury in October 2007 when he learned that his property had been destroyed.  Rather, on these facts, his injury occurred on May 4, 2006, the date on which his property was destroyed.  *See DeKine v. District of Columbia*, 422 A.2d 981, 986 (D.C. 1980)  (concluding that the 12-309 clock began to run on the day that District officials impounded horses owned by the operators of a horse-drawn carriage business, not on the day of the horses' release).  The Court cannot "read a discovery rule into § 12-309."  *George v. Dade*, 769 A.2d 760, 766 (D.C. 2001).

The Court therefore concludes that plaintiff's Notice under D.C. Code § 12-309 was untimely because it was filed more than six months after the date of his injury.

## III.   CONCLUSION

The Court grants as conceded the motions to dismiss filed on behalf of the Washington Metropolitan Area Transit Authority and the District of Columbia's Mayor and Chief of Police. Based on plaintiff's concessions, his Fourteenth Amendment claim and his tort claim for intentional infliction of emotional distress will be dismissed.   Because plaintiff neither states a civil rights claim against the District of Columbia under 42 U.S.C. § 1983 nor has complied with the mandatory notice requirements of D.C. Code § 12-309 with respect to the tort claims of negligence and conversion, the Court grants the District of Columbia's motion.  These rulings resolve all of the issues presented in this action, and this action accordingly will be dismissed.

A separate Order accompanies this Memorandum Opinion.


JOHN D. BATES
United States District Judge

DATE:  March 11, 2009